UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Georgina Y. Stephens; and Andrew W. Alexander, a minor child, by his mother and natural guardian, Georgina Y. Stephens,

Civ. File 01-633 (PAM/RLE)

Plaintiffs,

v.

Mary Jo A. Jensen-Carter,

Defendant.

---

**MEMORANDUM AND ORDER**

Mary Jo A. Jensen-Carter, Trustee of the Bankruptcy Estate of Larry K. Alexander,

Civ. File 05-33 (PAM/RLE)

Plaintiff,

v.

John A. Hedback, as Trustee of the Bankruptcy Estate of G. Yvonne Stephens; Larry K. Alexander; G. Yvonne Stephens; and John Doe and Jane Doe,

Defendants.

---

This matter is before the Court on Defendant G. Yvonne Stephens' Motion for Summary Judgment in Civil No. 05-33. For the reasons that follow, the Court denies the Motion and refers the Complaint in Civil No. 01-633 and the Adversarial Complaint in Civil No. 05-33 to the United States Bankruptcy Court.

**BACKGROUND**

The parties involved in this bankruptcy case have a long and tumultuous past. They have litigated for more than five years, with several visits to the Eighth Circuit Court of Appeals, several cases before the United States District Court for the District of Minnesota and the Bankruptcy Court for the District of Minnesota, and one case before the Ramsey County District Court.

At issue is whether property located at 875 Laurel Avenue in Saint Paul, Minnesota ("Property"), is part of the bankruptcy estate of either Defendant Larry K. Alexander or Defendant G. Yvonne Stephens. Alexander acquired the Property in 1977. Alexander and Stephens married in May 1990, and resided at the Property. Stephens claims that Alexander conveyed the Property to her and their minor child in March 1998, but other courts have questioned the veracity of that transfer.

**A. The Bankruptcy Proceedings of Alexander and Stephens**

Alexander moved out of the Property and filed for divorce on June 11, 1998.[1] He filed for Chapter 13 bankruptcy a week later. Alexander claimed a homestead exemption with respect to his interest in the Property.[2] However, the bankruptcy court found that Alexander could not claim an exemption in the Property because he did not physically reside at the Property when he filed his bankruptcy petition. Alexander's bankruptcy proceeding was later

[1] Alexander and Stephens have yet to finalize the divorce.

[2] Alexander also sought an exemption for property located at 175 North Lexington Parkway in Saint Paul, Minnesota, where he lived when he filed the bankruptcy petition.

converted to a Chapter 7 proceeding, and he again claimed a homestead exemption in the Property. However, the bankruptcy court concluded that the property was not exempt. Both the Eighth Circuit Bankruptcy Appellate Court and the Eight Circuit Court of Appeals affirmed this decision. In re Alexander, 239 B.R. 911, 916 (B.A.P. 8th Cir. 1999), aff'd 236 F.3d 431, 432-33 (8th Cir. 2001); see also In re Alexander, 270 B.R. 281, 286-89 (B.A.P. 8th Cir. 2001), aff'd 44 Fed. Appx. 32 (8th Cir. 2002).

Meanwhile, Stephens filed for Chapter 7 bankruptcy in August 1998 and for Chapter 13 bankruptcy in June 1999. In both petitions, Stephens listed the Property as her residence, but did not claim an ownership interest or seek a homestead exemption in the Property. In fact, Stephens stated that she paid Alexander $1,175 per month as rent on the Property. She also conceded in previous proceedings that Alexander was the sole record title holder to the Property, and she therefore did not believe she had any ownership interest in the Property. See, e.g., In re Stephens, 276 B.R. 610, 611 (B.A.P. 8th Cir. 2002); In re Alexander, 270 B.R. 281, 284 (B.A.P. 8th Cir. 2001).

Apparently due to the difficulty he was having claiming a homestead exemption in the Property in his own bankruptcy proceeding, Alexander subsequently filed an "Amended Schedule A & C to Correct Description of Realty Claimed Exempt" in Stephens' bankruptcy case. Alexander — and not Stephens — signed the document purporting to amend her schedules. Neither Stephens nor Alexander notified any of Stephens' creditors of the amendment. Moreover, Stephens did not mention the Property during the meeting of her creditors. Consequently, no one objected to the amendment, and the Clerk of the Bankruptcy

Court issued a Certificate Regarding Property Claimed as Exempt.[3] In addition, Defendant John Hedback, the trustee of the Stephens bankruptcy estate who was apparently unaware that Alexander was claiming an interest and exemption in the Property on Stephens' behalf, subsequently abandoned all property in her case. Stephens received a discharge in her Chapter 7 proceeding on November 18, 1998, and voluntarily dismissed her Chapter 13 case in December 1999.

In February 2001, after Alexander had exhausted all appeals in his bankruptcy action, Plaintiff Mary Jo Jensen-Carter, the trustee of the Alexander estate, advised Alexander and Stephens that they would have to vacate the premises so it could be sold for the benefit of the Alexander bankruptcy estate.

**B. Federal and State Actions**

In April 2001, Stephens commenced an action against Jensen-Carter in the United States District Court for the District of Minnesota, claiming that she had exempted the Property as her homestead in her bankruptcy case and that Jensen-Carter's attempt to take possession of the Property and liquidate it for the benefit of Alexander's bankruptcy estate violated the discharge injunction and automatic stay in her case, as well as her constitutional right to her homestead. The case, Civil No. 01-633, was assigned to Judge Richard H. Kyle. Although she admitted that Alexander held the title to the property, Stephens claimed that she had "substantial ownership

---

[3] There appears to be some discrepancy as to when the Certificate was issued. Plaintiff Mary Jo Jensen-Carter submitted a copy of a Certificate dated February 20, 2001, while Stephens provided a copy of a Certificate dated October 4, 1999. (Cf. Adversarial Compl. Ex. G with Stephens Aff. Ex. 31.)

rights, including [but] not limited to equitable interests in [Alexander's] interest in the Property upon . . . divorce and the legal right to reject any conveyance of the Property, which is her homestead." (Stephens Aff. Ex. 2 at ¶ 8.) Stephens filed a motion for a preliminary injunction, seeking to enjoin Jensen-Carter from attempting to evict Stephens, but later withdrew the motion.[4]

While the action before Judge Kyle was pending, Jensen-Carter commenced an eviction action in Ramsey County District Court under Minn. Stat. § 504B.301, alleging that the Alexander bankruptcy estate was the owner of the Property and seeking the immediate return of possession of the Property. (Id. Ex. 4 at ¶¶ 3,12.)

Stephens removed the eviction action to federal court. The eviction action was consolidated with the action before Judge Kyle. In August 2001, Jensen-Carter filed a motion to dismiss Stephens' federal claims and Stephens filed a motion for summary judgment. Ultimately, Judge Kyle remanded the state law claims so that the eviction action could proceed

[4] Stephens then brought a motion in Alexander's bankruptcy case, asserting her homestead claim in the Property. When the bankruptcy court refused to hear the motion, Stephens filed a Schedule C, purporting to claim a $200,000 homestead exemption in the Property. Jensen-Carter received notice of the claimed exemption on or around October 26, 2001, and objected to it on November 2, 2001. Stephens then filed a motion, asserting that Jensen-Carter's attempts to obtain possession of the Property violated the discharge injunction in her case. The bankruptcy court refused to enjoin Jensen-Carter from seeking to evict Stephens from the Property. In particular, the bankruptcy court determined that the action did not violate the discharge injunction because Jensen-Carter was not acting to collect, recover, or offset a debt owed by Stephens to Alexander. The Eighth Circuit Court of Appeals affirmed, finding that Jensen-Carter's attempts to recover the Property lay in rem and the discharge injunction frees a debtor from only in personam liability. See In re Stephens, 276 B.R. 610 (B.A.P. 8th Cir. 2002), aff'd 53 Fed. Appx. 392, 393 (8th Cir. 2002).

in Ramsey County District Court. He stayed proceedings on the federal claims and directed the parties to inform the Court when the state litigation was resolved.

The parties litigated for three years.[5] Sometime in 2002, Stephens asserted that Alexander had conveyed his interest in the Property to her and their son as joint tenants pursuant to an unrecorded quit claim deed dated March 15, 1998. The deed was recorded with the Ramsey County Recorder on June 30, 2003. Notably, this claim in property interest is contrary to what both Alexander and Stephens averred to in their divorce proceeding and bankruptcy petitions. It also contravenes Stephens' answers to interrogatories and responses to requests for admissions, where she did not claim any ownership in the Property and specifically stated that she was renting.[6]

Stephens moved for summary judgment in the eviction action, arguing that the seizure of her homestead violated Minnesota law. The Ramsey County District Court recognized that Jensen-Carter obtained title to the Property as part of the bankruptcy estate of Larry Alexander. The district court further stated:

> At the outset, it must be observed that there are serious and compelling questions regarding the good faith and the veracity of Alexander and Stephens in the commencement and conduct of their respective bankruptcy proceedings. An impartial observer could conclude . . . that they were involved in some sort of

---

[5] This includes Stephens filing an interlocutory appeal to the Minnesota Court of Appeals, contending that the Ramsey County District Court lacked subject matter jurisdiction for various reasons. The Court of Appeals rejected all of Stephens' arguments. See Jensen-Carter v. Alexander, No. C1-02-1845, 2003 WL 21448791 (Minn. Ct. App. June 24, 2003).

[6] Stephens also previously claimed that Alexander deeded to her the Lexington Parkway property, which the Ramsey County District Court "specifically found to be a fake and a sham." (Pl.'s Mem. in Opp'n. Ex. 14 at 6.)

> scheme with respect to the Property . . . Perhaps, the question of their bankruptcy good faith should be brought up in some appropriate context, but that context is not this unlawful detainer action. The question here is whether [Jensen-Carter] has shown that there are genuine issues of material fact relating to her claim to immediate possession of the Property.

(Id. Ex. 18 at 8.)

Ultimately, however, the district court found that Stephens has a homestead interest in the Property under Minn. Stat. § 510.01, which was created when she married Alexander and occupied the Property as her homestead. Because Jensen-Carter failed to show that Stephens had abandoned her homestead interest, the district court found that Stephens was entitled to immediate possession of the Property.[7]

In July 2004, Jensen-Carter successfully applied to reopen Stephens' bankruptcy action. In December 2004, Jensen-Carter filed an Adversarial Complaint in both the Alexander bankruptcy case and the Stephens bankruptcy case. Stephens removed the action to this Court. According to Jensen-Carter, the purpose of the action is to combine in one lawsuit all parties who have an interest in the Property. She claims that the Property belongs in the Alexander bankruptcy estate and that Alexander's attempt to transfer the Property to Stephens was fraudulent. Thus, she seeks to avoid the transfer of the Property under 11 U.S.C. § 549. Alternatively, Jensen-Carter submits that the Property should go to the Stephens bankruptcy estate and be administered by Hedback.

In January 2005, Stephens moved to reopen the case pending before Judge Kyle, Civil No. 01-633. The remaining claims in that action involve allegations that Jensen-Carter violated

---

[7] Jensen-Carter filed a notice of appeal, but later voluntarily dismissed the appeal.

11 U.S.C. §§ 524(a)(2)-(3) and 11 U.S.C. § 522(f)(1). In April 2005, that case was consolidated with the instant action.

**DISCUSSION**

Stephens sets forth several arguments in her Motion for Summary Judgment. First, she claims that this action is barred by res judicata and the Rooker-Feldman doctrine. Second, she submits that the action is barred by the statute of limitations. Finally, she maintains that Hedback should be dismissed because he has no stake in the action.

**A. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B. Rooker-Feldman**

Stephens maintains that the Court lacks subject matter jurisdiction over this action because Jensen-Carter seeks to overturn the decision by the Ramsey County District Court. The Rooker-Feldman doctrine states that lower federal courts lack subject matter jurisdiction to review state court judicial determinations. Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Prince v. Ark. Bd. of Exam'rs in Psychology, 380 F.3d 337, 340 (8th Cir. 2004). Instead, federal review of a state court decision is vested exclusively in the United States Supreme Court. Feldman, 460 U.S. at 486. The doctrine bars not only straightforward review of state court judgments, but also "indirect attempts by federal plaintiffs to undermine state court decisions." Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000). In determining whether Rooker-Feldman applies, a federal court must determine whether the claim is "inextricably intertwined" with the claim already decided in the state court. Id. at 492-93. A claim brought in federal court is inextricably intertwined if the federal district court must nullify the state court decision to find in favor of the federal plaintiff. Id. at 493. Thus, "Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding." Snider v. City of Excelsior Springs, 154 F.3d 809, 811 (8th Cir. 1998); see also Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004) (Rooker-Feldman bars federal review if requested relief would effectively reverse the state court decision or void its ruling).

However, the Rooker-Feldman doctrine has its limits. For example, Rooker-Feldman does not bar a federal claim when the state court is faced with federal and state claims, but declines to address the merits of the federal claims and rules only on the state issues. Simes v. Huckabee, 354 F.3d 823, 828-30 (8th Cir. 2004). Likewise, Rooker-Feldman does not apply to claims where Congress has specifically granted jurisdiction to the federal courts. Silverman v. Silverman, 338 F.3d 886, 894-95 (8th Cir. 2003). Finally, when "there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state court." Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. ___ (Mar. 30, 2005).

The Adversarial Complaint in this action claims that Jensen-Carter is "entitled to the immediate use, possession and occupancy of the Property." (Adversarial Compl. ¶ 18.) It therefore asks that the Court permanently enjoin Stephens from claiming any interest in the Property. It also asks that the Court order the United States Marshal to remove Stephens from the Property and direct the turnover of the Property to Jensen-Carter. In this regard, it appears that Jensen-Carter seeks to vacate the Ramsey County District Court's ruling that Stephens has a possessory interest in the Property. Any attempt by this Court to do so would run afoul of the Rooker-Feldman doctrine.

However, the Adversarial Complaint also claims that Alexander's purported transfer of the Property to Stephens was a sham and seeks to void the conveyance. The Ramsey County District Court expressly declined to address this issue, and instead determined only that Stephens had an immediate possessory right in the Property. "An unlawful detainer action merely determines the right to present possession and does not adjudicate the legal or equitable

ownership rights of the parties." Fed. Land Bank of St. Paul v. Obermoller, 429 N.W.2d 251, 257 (Minn. Ct. App. 1988) (citation omitted); see also Minn. Stat. § 504B.001 (defining "eviction" as "a summary court proceeding to remove a tenant or occupant from or otherwise recover possession of real property"); Amresco Residential Mortg. Corp. v. Strange, 631 N.W.2d 444, 444-46 (Minn. Ct. App. 2001) (title issues may not be raised in an unlawful detainer proceeding because of "the summary nature of eviction proceedings"); Gallagher v. Moffet, 46 N.W.2d 792, 793 (Minn. 1951) (stating that an unlawful detainer proceeding "merely determines the right to present possession and does not adjudicate the ultimate legal or equitable rights of ownership possessed by the parties").

Furthermore, the Ramsey County District Court did not decide any issues relating to the bankruptcy estates of either Alexander or Stephens.[8] For example, the district court did not decide to what extent, if any, Stephens owned the Property, or whether Stephens held a legal or equitable interest in the Property. In addition, the district court did not determine whether the Property was part of Stephens' bankruptcy estate or whether Stephens exempted the Property from her bankruptcy estate. Instead, it merely decided that Stephens had an immediate right to possess the Property. Thus, federal claims before this Court are not inextricably intertwined with the state court decision.

Moreover, the state court lacked jurisdiction to affect any interest that the Alexander bankruptcy estate has in the Property. Abramowitz v. Palmer, 999 F.2d 1274, 1277 (8th Cir.

[8] Contrary to Stephens' assertions, the Ramsey County District Court did not rule that the Property was not part of the Alexander bankruptcy estate by virtue of its holding that Stephens had a right of immediate possession of the Property.

1993) (bankruptcy jurisdiction includes all property of the debtor and the bankruptcy estate); see also 28 U.S.C. § 1334(e) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case, and of property of the estate."). Similarly, the determination of whether the Property is part of the Stephens bankruptcy estate is an issue exclusively for the federal court, which has jurisdiction over all property of the Stephens and of her bankruptcy estate. Abramowitz, 999 F.2d at 1277 (bankruptcy court had jurisdiction over claims relating to home even though home was exempted from bankruptcy estate). Hence, the Ramsey County District Court could not issue a decision concerning ownership and exemption rights of either bankruptcy estate. As the Bankruptcy Appellate Panel of the Eighth Circuit has previously noted:

> [E]ven assuming Stephens has an ownership interest in the 875 Laurel property and properly claimed a homestead exemption therein, which is by no means certain, Stephens' alleged homestead rights are not implicated here. As the Bankruptcy Court said, "all this does is present two parties with competing claims to the same thing, the same asset, the same res . . ." Again, since Jensen-Carter is attempting to enforce Alexander's property rights in the 875 Laurel property and is not attempting to collect any debt Stephens might owe to Alexander, Jensen-Carter is not infringing upon Stephens' alleged homestead rights.

In re Stephens, 276 B.R. 610, 614 (B.A.P. 8th Cir. 2002).

Finally, a simultaneous federal court action, Civil No. 01-633, was pending when the Ramsey County District Court rendered its decision. Although the Ramsey County District Court found that Stephens held a possessory interest in the Property, that decision did not affect the jurisdiction of the federal courts as to the federal issues raised in that action.

In sum, although the Ramsey County District Court found that Stephens held a sufficient possessory interest to avoid eviction, several federal issues remain outstanding. In particular, the bankruptcy court must determine what ownership interest Stephens holds in the Property and whether she properly claimed an exemption of the Property in her bankruptcy proceeding. It must also determine whether Jensen-Carter violated 11 U.S.C. § 522(f)(1) and 11 U.S.C. §§ 524(a)(2)-(3), as alleged by Stephens.

**C. Res Judicata**

Stephens claims that res judicata bars Jensen-Carter from re-litigating issues already decided by the Ramsey County District Court. The preclusion principle of res judicata prevents the re-litigation of a claim that was raised or that could have been raised in a prior suit. Banks v. Int'l Union Elec., Elec., Technical, Salaried & Mach. Workers, 390 F.3d 1049, 1052 (8th Cir. 2004) (citing Lane v. Peterson, 899 F.2d 737, 741 (8th Cir. 1990)). The Court examines three factors to determine if res judicata applies: "(1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the prior judgment was a final judgment on the merits; and (3) whether the same cause of action and the same parties or their privies were involved in both cases." Id.

Because the Ramsey County District Court did not have jurisdiction to determine whether the Property is part of the Stephens bankruptcy estate or whether the property was

properly exempted from Stephens' bankruptcy estate, res judicata does not bar the bankruptcy court from determining those issues.[9]

## D. Statute of Limitations

Stephens also argues that the statute of limitations under 11 U.S.C. § 549 bars this action. Section 549(a) authorizes a trustee to avoid a transfer of estate property that was made after the commencement of the case and not authorized by the bankruptcy court. 11 U.S.C. § 549(a). However, such an action "may not be commenced after the earlier of — (1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed." Id. § 549(d).

Stephens claims that Alexander conveyed the Property to her in March 1998, and recorded the deed in June 2003. This action, which seeks to avoid transfer of the Property under § 549, commenced in December 2004. Because the Adversarial Complaint was filed six years after the date of the post-petition transfer, the limitations period contained in § 549(d) has run.

However, based on the facts of this case, the statute of limitations may be tolled. For example, courts invoke the doctrine of equitable estoppel to bar a defendant from asserting a

---

[9] Stephens also contends that the bankruptcy court overseeing Alexander's bankruptcy abstained in favor of the state court and that his abstention is controlling. However, Stephens misconstrues the bankruptcy court's ruling. In September 2002, the bankruptcy court denied Stephens' motion for an order sustaining the homestead exemption. In doing so, the court recognized that Stephens could defend whatever her interest in the Property was, but held that she had no standing to attempt to exempt Alexander's interest in the Property. The court further explained that it had no jurisdiction to protect Stephens' interest, and that her interest should have been determined in her own bankruptcy proceeding. The court did not hold that the state court should decide Stephens' ownership rights. Rather, the court simply refused to allow Stephens to seek an exemption on behalf of Alexander.

statute of limitations defense where concealment or fraud on the part of the defendant precluded the trustee from filing an action within the act's limitations period. Smith v. Mark Twain Nat'l Bank, 805 F.2d 278, 293-94 (8th Cir. 1986) (equitable estoppel doctrine applies to § 549 action). The inequitable conduct on the part of the defendant need not be active or intentional. Rather, equitable estoppel will apply if the trustee does not know about the transfer despite reasonably diligent efforts to discover the wrongful act. In such cases, the statute of limitations period begins to run only after the trustee knew or should have known of the transfer. In re Russ, No. BKY 4-87-2332, ADV 4–96-0288, 1997 WL 188449, at *3 (Bankr. D. Minn. Apr. 18, 1997).

The Court find that a genuine issue of material fact remains on whether the statute of limitations is subject to equitable tolling. Previously, Stephens consistently took the position that she was renting the Property from Alexander and that she claimed no ownership interest in the Property. For example, in August 1999, Stephens informed Jensen-Carter of the amount of rent Stephens had paid Alexander for the lease of the Property, and indicated a willingness to pay rent to Jensen-Carter. Similarly, in the context of the marriage dissolution proceeding, Stephens filed an Answer and Counter-Petition, verifying under oath that Alexander is the owner of the Property and that he acquired the Property before marrying Stephens. Finally, in both of her bankruptcy petitions, Stephens failed to claim an interest in or seek an exemption with respect to any interest she may have in the Property. The Court finds that these undisputed facts support the inference that Alexander and Stephens took positive steps to conceal the purported transfer in the Property. However, the record does not indicate when Jensen-Carter

learned of the purported transfer. Thus, because a genuine issue of fact remains, summary judgment on this point is inappropriate.

**E. Challenge to Hedback as a Party**

Stephens raises several challenges to Hedbeck as a party to this action. First, Stephens asks that the Court realign Hedback as a plaintiff, claiming that there is no antagonism between Hedback and Jensen-Carter. However, the interests of Hedback and Jensen-Carter are inherently adversarial, as each are trustees in bankruptcy estates claiming an interest in the Property. Second, Stephens argues that Hedback should be dismissed from this action because he has no standing. Finally, she contends that Hedback has no interest in this litigation for two reasons: the Property was exempt from her bankruptcy estate and Hedback abandoned the Property. The Court rejects these arguments, just as the Eighth Circuit Court of Appeals previously did:

> [T]here is no evidence in the record before us that Ms. Stephens did properly claim an interest or an exemption for the property in either of her bankruptcy cases . . . Particularly, the record before us includes the schedules and purported amended schedules filed in Ms. Stephens' bankruptcy cases, as well as certain other documents from her cases, including an August 9, 1999 e-mail to [Jensen-Carter] in which Ms. Stephens confirms that she was paying Alexander rent on the property. In neither of Ms. Stephens' cases is the 875 Laurel property listed on her Schedules A or C. In addition, even giving Mr. Alexander a very generous interpretation of the "Amended Schedule A & C to Correct Description of Realty Claimed Exempt" and assuming it could be construed as amending Ms. Stephens' Schedules A & C in the manner Alexander contends it does (which we seriously question), in neither case were the "amended schedules" served on the proper parties. Furthermore, since the Trustees in her cases were apparently unaware of the claim of homestead exemption due to the lack of notice and misleading nature of the document, the Trustees' purported abandonment of such property was ineffectual.

In re Alexander, 270 B.R. 281, 288-89 (8th Cir. 2001); see also Wick v. Wick, 276 F.3d 412, 414 (8th Cir. 2002) (when debtor gives a trustee false or incomplete information about an asset, abandonment is revocable); Vreugdenhill v. Navistar Int'l Transp. Corp., 950 F.2d 524, 526 (8th Cir. 1991) (for property to be abandoned, the debtor must formally schedule the property). Thus, Hedback has a sufficient interest in this litigation.

Stephens also argues that any challenge to the exemption is now untimely. Under Federal Rule of Bankruptcy Procedure 4003(b), a trustee or creditor must file objections to property claimed as exempt within thirty days of the meeting of creditors. Failure to object to a homestead exemption within the thirty-day limit generally precludes trustees and creditors from challenging the exemption, and the homestead effectively falls out of the estate. Taylor v. Freeland & Kron, 503 U.S. 638, 643-44 (1992); Abramowitz v. Palmer, 999 F.2d 1274, 1276 (8th Cir. 1993). However, Stephens did not disclose the exemption to Hedback. Thus, summary judgment is inappropriate on this point.

**F. Issues that Remain**

The definition of homestead requires that the Property be both owned and occupied by the debtor. Minn. Stat. § 510.01. Thus, a question remains whether Stephens has an ownership interest in the Property. Moreover, an issue remains whether Stephens properly claimed an exemption in the Property as her homestead. See In re Curry, 160 B.R. 813 (Bankr. D. Minn. 1993). Accordingly, the Court refers the Adversarial Complaint in Civil No. 05-33 to Bankruptcy Proceeding 04-3468 to determine whether Stephens properly claimed an interest in or an exemption for the Property in her bankruptcy case. In addition, the Court refers the

Complaint in Civil No. 01-633 to Bankruptcy Proceeding 04-3468 to determine whether the claims Stephens raises in that Complaint have merit.

**CONCLUSION**

Accordingly, based on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Clerk Doc. No. 10) is **DENIED**;
2. This Adversarial Complaint is **REFERRED** to the United States Bankruptcy Court in Bankruptcy Proceeding 04-3468; and
3. The Complaint in Civil No. 01-633 is **REFERRED** to the United States Bankruptcy Court in Bankruptcy Proceeding 04-3468.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 11, 2005

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge